**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| SMITH INTERNATIONAL, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 16-56-SLR-SRF |
| | ) |
| BAKER HUGHES INCORPORATED, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

### I.   INTRODUCTION

On January 29, 2016, plaintiff Smith International, Inc. ("Smith" or "plaintiff") filed this

action against defendant Baker Hughes Incorporated ("Baker" or "defendant"), alleging

infringement of United States Patent Nos. 6,732,817 ("the '817 patent") and 7,314,099 ("the

'099 patent"). (D.I. 1)  Pending before the court is Baker's motion to transfer venue to the

Southern District of Texas pursuant to 28 U.S.C. § 1404(a).  (D.I. 8)  For the following reasons, I

recommend that the court deny Baker's motion to transfer.

### II.   BACKGROUND

Smith is a Delaware corporation with its principal place of business located in Houston,

Texas.  (D.I. 1 at ¶ 2)  Baker is a Delaware corporation maintaining its principal place of

business in Houston, Texas.  (*Id.* at ¶ 3)  On May 11, 2004, the '817 patent, entitled "Expandable

Underreamer / Stabilizer," issued to Charles Dewey and Wei Xu.  (*Id.* at ¶ 7)  On January 1,

2008, the '099 patent, entitled "Selectively Actuatable Expandable Underreamer / Stabilizer,"

issued to the same inventors.  (*Id.* at ¶ 11)  The '817 patent and the '099 patent disclose oil and

gas drilling equipment.  (*Id.* at ¶¶ 8, 12) (quoting '817 and '099 patent Abstracts, respectively).

Certain claims of the '817 patent are currently being reexamined by the United States Patent and

Trademark Office ("PTO"). (*Id.* at ¶ 9)  The '099 patent was reexamined by the PTO, which

issued a reexamination certificate on December 16, 2014, confirming the patentability of claims

1-20 and 22-57 of the '099 patent. (*Id.* at 13)  Smith is the owner by assignment of both the '817

patent and the '099 patent. (*Id.* at ¶¶ 10, 14)

On December 7, 2012, Smith and its affiliates, Schlumberger Technology and Specialised

Petroleum (collectively, "Schlumberger"), sued Baker in the Southern District of Texas (the

"Texas action"), alleging breach of contract of a patent dispute resolution agreement and a patent

dispute procedure agreement, fraud in the inducement of the agreements, and infringement of the

'817 and '099 patents, among other patents not at issue in the present matter. (D.I. 10, Ex. A)

Baker filed a motion to dismiss the arbitrable claims, and also alleged that the infringement

claims relating to the '817 and '099 patents should be dismissed for failure to state a claim. (D.I.

15, Ex. A)  The Southern District of Texas issued an order on the pending motion on December

9, 2015, concluding that the arbitrable claims should proceed to arbitration and denying the

motion to dismiss the '817 and '099 patent infringement claims without prejudice, while

permitting Smith to amend its complaint with respect to these claims. (*Id.*, Ex. C)  Specifically,

the court ruled as follows:

> The parties agree that Schlumberger's claims that Baker Hughes infringed its
> 6,732,817 and 7,314,099 patents are not arbitrable.  Baker Hughes has moved to
> dismiss that claim because the petition does not describe the technology or
> infringement with precision.  Its motion will be denied without prejudice.
> Schlumberger may promptly amend its complaint.

(*Id.*)  In lieu of filing an amended complaint regarding the claims for infringement of the '817

and '099 patents, Schlumberger filed a notice of voluntary dismissal on January 29, 2016. (D.I.

10, Ex. C)  The court entered an order dismissing the action in accordance with the notice of

voluntary dismissal on February 1, 2016. (S.D. Tex. C.A. No. 4:12-cv-3573; D.I. 84)

2

## III.   STANDARD OF REVIEW

Section 1404(a) of Title 28 of the United States Code grants district courts the authority to transfer venue "[f]or the convenience of parties and witnesses, in the interests of justice . . . to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).  Much has been written about the legal standard for motions to transfer under 28 U.S.C. § 1404(a).  *See, e.g.*, *In re Link_A_Media Devices Corp.*, 662 F.3d 1221 (Fed. Cir. 2011); *Jumara v. State Farm Ins. Co.*, 55 F.3d 873 (3d Cir. 1995); *Helicos Biosciences Corp. v. Illumina, Inc.*, 858 F. Supp. 2d 367 (D. Del. 2012).

Referring specifically to the analytical framework described in *Helicos*, the court starts with the premise that a defendant's state of incorporation has always been "a predictable, legitimate venue for bringing suit" and that "a plaintiff, as the injured party, generally ha[s] been 'accorded [the] privilege of bringing an action where he chooses.'" 858 F. Supp. 2d at 371 (quoting *Norwood v. Kirkpatrick*, 349 U.S. 29, 31 (1955)).  Indeed, the Third Circuit in *Jumara* reminds the reader that "[t]he burden of establishing the need for transfer . . . rests with the movant" and that, "in ruling on defendants' motion, the plaintiff's choice of venue should not be lightly disturbed." 55 F.3d at 879 (citation omitted).

The Third Circuit goes on to recognize that,

> [i]n ruling on § 1404(a) motions, courts have not limited their consideration to the three enumerated factors in § 1404(a) (convenience of parties, convenience of witnesses, or interests of justice), and, indeed, commentators have called on the courts to "consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum."

*Id.* (citation omitted).  The Court then describes some of the "many variants of the private and public interests protected by the language of § 1404(a)." *Id.*

3

The private interests have included: plaintiff's forum of preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses – but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

The public interests have included: the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* (citations omitted).

## IV.   ANALYSIS

With the above "jurisdictional guideposts" in mind, the court turns to the "difficult issue of federal comity" presented by transfer motions. *E.E.O.C. v. Univ. of Pa.*, 850 F.2d 969, 976 (3d Cir. 1988).  Baker has not challenged Smith's assertion that venue would also be proper in the Southern District of Texas. (D.I. 14)  As such, the court does not further address the appropriateness of the proposed transferee forum.[1]  *See* 28 U.S.C. § 1404(a).

Turning to the *Jumara* factors, the court notes that the parties do not dispute several of the public interest factors:  (1) the enforceability of the judgment, (2) the local interest in resolving local controversies, (3) the public policies of the fora, and (4) the familiarity of the trial judge with the applicable state law in diversity cases.  (D.I. 9 at 10; D.I. 14 at 15)  These factors are therefore neutral.

---

[1] The first step in the transfer analysis is to determine whether the movant has demonstrated that the action could have been brought in the proposed transferee venue in the first instance. *See Mallinckrodt, Inc. v. E-Z-Em, Inc.*, 670 F. Supp. 2d 329, 356 (D. Del. 2009).  This issue is not disputed.

4

A.      **Private Interests**

1.  **Plaintiff's forum preference**

According to Baker, Smith's forum preference should be given less weight in this case because Smith's original choice of forum in bringing the infringement claims was the Southern District of Texas, and Delaware is not Smith's "home turf." (D.I. 9 at 6-7)  In response, Smith contends that its choice of forum should be afforded significant deference, particularly because both parties are incorporated in Delaware. (D.I. 14 at 5-8)  According to Smith, it had no choice in selecting the Southern District of Texas as the forum in the previous action because the choice of law provisions in the agreements, which were the subject of the breach of contract and fraud claims, required the disputes to be litigated in Texas. (*Id.* at 6)

Plaintiffs have historically been accorded the privilege of choosing their preferred venue for pursuing their claims. *See C. R. Bard, Inc. v. Angiodynamics, Inc.*, C.A. No. 15-218-SLR, 2016 WL 153033, at *2–4 (D. Del. Jan. 12, 2016). "It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice 'should not be lightly disturbed.'" *Shuttle v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) (internal citation omitted). However, courts have recognized that "when a plaintiff chooses to bring an action in a district where it is not physically located, its forum preference is entitled to something less than the paramount consideration...." *Linex Techs., Inc. v. Hewlett-Packard Co.*, C.A. No. 11-400-GMS, 2013 WL 105323, at *3 (D. Del. Jan. 7, 2013).

In the present action, Smith does not allege that it has facilities in Delaware. However, even where the chosen forum is not a "home forum," courts still give a plaintiff's preference "heightened" weight. *Linex*, 2013 WL 105323, at *3. "The deference afforded plaintiff's choice of forum will apply as long as plaintiff has selected the forum for some legitimate reason."

*Cypress Semiconductor Corp. v. Integrated Circuit Sys., Inc.*, C.A. No. 01-199-SLR, 2001 WL 1617186, at *2 (D. Del. Nov. 28, 2001) (internal citations omitted). A party's state of incorporation is a traditional and legitimate venue. *See Helicos*, 858 F. Supp. 2d at 371; *see also ChriMar Sys., Inc. v. Cisco Sys., Inc.*, C.A. No. 11-1050-GMS, 2013 WL 828220, at *4 (D. Del. Mar. 6, 2013) (citing *Schubert v. OSRAM AG*, C.A. No. 12-923-GMS, 2013 WL 587890, at *4 (D. Del. Feb. 14, 2013)); *Intellectual Ventures I LLC v. Checkpoint Software Techs. Ltd.*, 797 F. Supp. 2d 472, 482 (D. Del. 2011) (concluding that "when a corporation chooses to incorporate in Delaware and accept the benefits of incorporating in Delaware, it cannot complain once another corporation brings suit against it in Delaware."). Delaware is a legitimate forum, as both Smith and Baker are incorporated in Delaware. *See FastVDO LLC v. Paramount Pictures Corp.*, 947 F. Supp. 2d 460, 462 (D. Del. 2013). This court does not generally elevate a defendant's choice of venue over that of a plaintiff, and "the fact that plaintiffs have historically been accorded the privilege of choosing their preferred venue for pursuing their claims remains a significant factor." *FastVDO LLC v. Paramount Pictures Corp.*, 947 F. Supp. 2d 460, 462 (D. Del. 2013). In light of the fact that Delaware is not Smith's home turf, but is the state of incorporation of both parties, the court awards this factor "increased weight in the *Jumara* analysis but less than the 'substantial' or 'paramount' weight" it would be given had Smith filed suit in its home forum. *ChriMar*, 2013 WL 828220, at *4.

Although Smith's parent corporation, Schlumberger, brought causes of action for infringement of the '817 and '099 patents as lead plaintiff in the Southern District of Texas, the Texas action involved two additional plaintiffs and several additional, unrelated causes of action which distinguish the case from the present matter. (D.I. 10, Ex. A) Specifically, the Texas action included claims for breach of contract of two patent alternative dispute resolution

agreements, as well as fraud in the inducement of those contracts. (*Id.*) The contracts are governed by Texas law and contain choice of law provisions requiring litigation to proceed in Texas. Once the court determined that the contract and fraud-based claims should be sent to arbitration, the plaintiffs voluntarily dismissed the infringement claims regarding the '817 and '099 patents, and Smith initiated the present suit. (D.I. 15, Ex. C; D.I. 10, Ex. C; D.I. 1) Nothing about this sequence of events suggests that Smith preferred the Southern District of Texas as a jurisdiction for litigating the infringement claims against the '817 and '099 patents. The nature of the case has substantially changed since the Texas action was first filed. For the foregoing reasons, this factor weighs against transfer.

### 2. Defendant's forum preference

The parties do not specifically address this factor in the briefing. Courts "decline to elevate [a defendant's] convenience over the choice of a neutral forum selected by [the defendant] as the situs of [its] incorporation." *Stephenson v. Game Show Network, LLC*, 933 F. Supp. 2d 674, 678 (D. Del. 2013) (citing *Cradle IP, LLC v. Texas Instruments, Inc.,* 923 F. Supp. 2d 696, 699–700 (D. Del. 2013)). Given that convenience is separately considered in the transfer analysis, the court declines to elevate Baker's choice of venue over Smith's preferred forum. *C.R. Bard*, 2016 WL 153033, at *2.

### 3. Where the claim arose, convenience of the parties, & location of books and records

Addressing three of the private interest factors jointly, Baker asserts that the case should be transferred because the development of the allegedly infringing products took place in Texas, party witnesses with knowledge of the development of the accused products are located in Texas, and documents relating to the production, promotion, marketing, and sales of the accused products are maintained in Texas and Germany. (D.I. 9 at 10) Smith responds that the acts

7

giving rise to the present action occur nationwide, and the historical location of the development of the accused products has nothing to do with where a case will be more conveniently tried. (D.I. 14 at 13-14)

A claim for patent infringement arises wherever someone has committed acts of infringement, to wit, "makes, uses, offers to sell, or sells any patented invention" without authority. *See generally* 35 U.S.C. § 271(a); *Red Wing Shoe Co., Inc. v. Hockerson–Halberstadt, Inc.*, 148 F.3d 1355, 1360 (Fed. Cir. 1998) (an infringement claim "arises out of instances of making, using, or selling the patented invention"). Because Baker manufactures, sells, and uses its allegedly infringing products nationwide, the asserted patent claims may be said to arise in Delaware. *See C. R. Bard*, 2016 WL 153033, at \*2–4 (finding that a patent claim arose in Delaware when the defendant sold products there). This factor weighs against transfer.

In evaluating the convenience of the parties, a district court should focus on the parties' relative physical and financial condition. *See C. R. Bard*, 2016 WL 153033, at \*3 (citing *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995)). When a party "accept[s] the benefits of incorporation under the laws of the State of Delaware, 'a company should not be successful in arguing that litigation' in Delaware is 'inconvenient,' 'absent some showing of a unique or unexpected burden.'" *Scientific Telecomm., LLC v. Adtran, Inc.*, C.A. No. 15-647-SLR, 2016 WL 1650760, at \*1 (D. Del. Apr. 25, 2016) (quoting *ADE Corp. v. KLA-Tencor Corp.*, 138 F. Supp. 2d 565, 573 (D. Del. 2001)). Baker is a large Delaware corporation with resources to litigate in this district. *See Stephenson v. Game Show Network, LLC*, 933 F. Supp. 2d 674, 670 (D. Del. 2013) (denying a motion to transfer where the defendant was incorporated in Delaware and had the resources to litigate there); *Versata Software, Inc. v. Callidus Software Inc.*, 944 F.

Supp. 2d 357, 361 (D. Del. 2013) (transfer not warranted where both parties had experience litigating in multiple jurisdictions). This factor weighs against transfer.

The Third Circuit in *Jumara* advised that the location of books and records is only determinative if "the files c[an] not be produced in the alternative forum." 55 F.3d at 879. However, the Federal Circuit has explained that "[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009). Nevertheless, courts within the District of Delaware have repeatedly recognized that recent technological advances have reduced the weight of this factor. *See, e.g., Intellectual Ventures I LLC, v. Checkpoint Software Techs. Ltd.*, 797 F. Supp. 2d 472, 485 (D. Del. 2011); *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 208 (D. Del. 1998); *Nihon Tsushin Kabushiki Kaisha v. Davidson*, 595 F. Supp. 2d 363, 372 (D. Del. 2009). Today, "virtually all businesses maintain their books and records in electronic format readily available for review and use at any location." *C. R. Bard*, 2016 WL 153033, at *3; *see also Quest Integrity USA, LLC v. Clean Harbors Indus. Servs., Inc.*, 114 F. Supp. 3d 187, 191 (D. Del. 2015).

Baker has not shown that relevant documents cannot be transported to Delaware. *See Cruise Control Techs. LLC v. Chrysler Group LLC*, C.A. No. 12-1755-GMS, 2014 WL 1304820, at *4 (D. Del. Mar. 31, 2014) (concluding that location of books and records is only relevant "where the Defendants show that there are books and records that cannot be transported or transmitted to Delaware."). Therefore, this factor is neutral.

9

#### 4. Convenience of the witnesses

Baker asserts that transfer is warranted because every material witness is based in Houston, Texas, where both parties' principal places of business are located. (D.I. 9 at 8-9) Baker directs the court to evidence showing that the inventors of the patents-in-suit, the law firm that prosecuted the patents-in-suit, and employees of Baker who have knowledge of the accused products are located in the Houston, Texas metropolitan area. (*Id.* at 8) According to Baker, some witnesses may be unavailable in Delaware, including former Schlumberger employees or non-employee inventors who could not be compelled to appear at trial in Delaware. (*Id.* at 9) In response, Smith alleges that Baker has not named a single witness who will be unavailable for trial in Delaware. (D.I. 14 at 11)

The relevant inquiry with respect to convenience of the witnesses is not whether witnesses are inconvenienced by litigation that matters, but rather, whether witnesses "actually may be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879. The inconvenience of travel does not demonstrate that witnesses would "actually be unavailable for trial," as required by *Jumara.* 55 F.3d 873, 879 (3d Cir. 1995). The court has previously found that

> travel expenses and inconveniences incurred for that purpose, by a Delaware defendant, [are] not overly burdensome. From a practical standpoint, much of the testimony presented at trial these days is presented via recorded depositions, as opposed to witnesses traveling and appearing live. There certainly is no obstacle to [a party] embracing this routine trial practice.

*Oracle Corp. v. epicRealm Licensing, LP*, No. Civ. 06-414-SLR, 2007 WL 901543, at *4 (D. Del. Mar. 26, 2007). Because Baker has not identified any witnesses who cannot appear in Delaware for trial, this factor is neutral.

### B.    Public Interests

#### 1.  Practical considerations

In support of its motion to transfer, Baker contends that practical considerations weigh in

favor of transfer to the Southern District of Texas because the related Texas action was

previously pending before the proposed transferee court, and the Southern District of Texas

therefore has a "head start" on consideration of the claims.  (D.I. 9 at 4-5)  In response, Smith

alleges that the Southern District of Texas has no greater familiarity with the claims at issue than

the District of Delaware because the proposed transferee district did not substantively address the

'817 and '099 patents or the allegations of infringement before those claims were dismissed.

(D.I. 14 at 8-9)

The Texas action has no bearing on the transfer analysis in the present case because the

court did not substantively address the causes of action for infringement of the '817 and '099

patents before those claims were voluntarily dismissed.  *See C.R. Bard*, 2016 WL 153033, at *4

(holding that action in proposed transferee forum did not weigh in favor of transfer because

action was stayed before any substantive analysis took place).  Specifically, the Southern District

of Texas denied the motion to dismiss the infringement claims regarding the '817 and '099

patents without prejudice and permitted Smith an opportunity to amend those claims without

further discussion of the sufficiency of the claims.  (D.I. 15, Ex. C)  Therefore, the Southern

District of Texas has no greater familiarity with the claims in the present action than Delaware.

This factor is neutral.

#### 2.    Court congestion

Baker contends that practical considerations weigh in favor of transfer because the

Southern District of Texas' docket is less congested.  (D.I. 9 at 5-6)  In response, Smith alleges

that the Southern District of Texas is more congested than the District of Delaware, as indicated by the fact that the motion to dismiss in the Texas action was pending for three years before it was resolved, and judges in the Southern District of Texas have had more pending cases and twice as many new filings as judges in the District of Delaware in the past year. (D.I. 14 at 10-11)

The court is not persuaded that administrative difficulties due to court congestion favor transfer. *See Textron Innovations, Inc. v. The Toro Co.*, C.A. No. 05-486-GMS, 2005 WL 2620196, at *3 (D. Del. Oct. 14, 2005) ("[T]he court is not persuaded that any disparity in court congestion, to the extent there is any, will be so great as to weigh strongly in favor of a transfer."). The case management orders issued by this court "always start with the schedules proposed by the litigators. It has been my experience that most litigators (especially those representing defendants) are in no hurry to resolve the dispute; if there is a need to expedite proceedings," the court makes efforts to accommodate that need. *Scientific Telecomm.*, 2016 WL 1650760, at *1. For these reasons, the court generally finds that this factor is neutral.

## C.     Transfer Analysis Summary

Baker has not shown that the *Jumara* factors as a whole weigh strongly in favor transfer. Only Baker's forum preference weighs in favor of transfer, and that preference does not warrant maximum deference. On the other hand, the remaining factors are neutral or weigh in favor of Smith. "Defendant has the burden of persuading the court that transfer is appropriate, not only for its convenience but in the interests of justice." *C. R. Bard*, 2016 WL 153033, at *4. In the present action, Smith chose a legitimate forum because Delaware is the state of incorporation of both parties. *See id.* "Although Delaware is not the locus of any party's business activities, it is a neutral forum, and the action does not implicate the laws of another state. *Id.*; *see also*

12

*Hologic, Inc. v. Minerva Surgical, Inc.*, C.A. No. 15-1031-SLR, 2016 WL 789349, at *2 (D. Del. Feb. 29, 2016) (declining "to elevate the convenience of one party over another" where the action involved Delaware corporations and did not implicate the state laws of another jurisdiction).

The court recognizes that it may be more expensive and inconvenient for Baker to litigate in Delaware instead of Texas. However, under the circumstances, the court "decline[s] to elevate the convenience of one party over the other," as "discovery is a local event and trial is a limited event." *C. R. Bard*, 2016 WL 153033 at *4 n.6 (noting that "[d]iscovery is largely electronic, with depositions taking place where the deponents reside or work. Moreover, most trials now are scheduled for less than seven days, and involve only a handful of live witnesses and a limited number of documents."); *Scientific Telecomm., LLC v. Adtran, Inc.*, Civ. No. 15-647-SLR, 2016 WL 1650760, at *2 (D. Del. Apr. 25, 2016). Delaware imposes no "unique or unexpected burden" on Baker, such that transfer is warranted in the interests of justice. *Scientific Telecomm.*, 2016 WL 1650760, at *2 (explaining that a Delaware corporation cannot successfully argue that Delaware is an inconvenient forum "absent some showing of a unique or unexpected burden."). Therefore, Baker's motion to transfer venue should be denied.

## V.   CONCLUSION

For the foregoing reasons, I recommend that the court deny Baker's motion to transfer venue.  (D.I. 8)

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objections and responses to the objections are limited to ten (10)

pages each.  The failure of a party to object to legal conclusions may result in the loss of the right

to de novo review in the District Court.  *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1

(3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R.

Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website,

http://www.ded.uscourts.gov.

Dated: August 10 , 2016

Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE