IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SMITH INTERNATIONAL, INC. <br><br> Plaintiff, <br><br> v. <br><br> BAKER HUGHES, A GE COMPANY, LLC, <br><br> Defendant. | C.A. No. 16-56-ER |

**JOINT STATUS REPORT**

Plaintiff Smith International, Inc. ("Smith") and Defendant Baker Hughes, a GE Company, LLC ("Baker Hughes") (collectively, "the Parties") respectfully submit this Joint Status Report pursuant to the Court's August 17, 2020 Order (D.I. 339), which directs the Parties to submit to the Court by October 22, 2020 a suggested outline for how the Parties wish to proceed in the case.

**1.    BIFURCATION**:  The Parties agree that the trial of this case should not be bifurcated.

**2.    JURY DEMAND:**  The Parties agree that this case should be tried before a jury. With respect to venue:

**A.    Smith's Position:**  As mentioned in the Parties' September 30, 2019 Letter to the Court (D.I. 329), Smith is amenable to either selecting a jury and trying this case in the District of Delaware or in the Eastern District of Pennsylvania, if that would provide the first available trial date.

**B.    Baker Hughes's Position:** As mentioned in D.I. 329, September 30, 2019 Letter to the Court, Baker Hughes respectfully submits that the jury trial should be conducted in

1

the federal courthouse in Wilmington, Delaware, with the jury pool drawn from the District of Delaware.

    **3.**     **TIME TO TRIAL:** With respect to the earliest date counsel believes the case can proceed to trial:

    **A.**     **Smith's Position:** Smith believes that this case is ready to be tried and that the case should proceed to trial as early as the Court has available, given the current COVID-19 circumstances. Smith respectfully requests adequate time to submit the Joint Pretrial Order, Proposed Jury Instructions, Proposed Jury Charge, Motions *in Limine*, and any other required pre-trial submissions. The submission of these pre-trial materials can be completed within six weeks, including supplementation of discovery responses and production of updated financials. Smith responds to Baker Hughes' additional issues as follows:

    **(i)**     **Updated Disclosures of Trial Witnesses**: During the October 19, 2020 meet and confer preceding this submission, Baker Hughes' counsel stated they intend to disclose at least one new trial witness who would provide new and undisclosed testimony at trial. Smith stated its objection and requested the witness's identity and any purported basis for adding a new witness at this time. Baker Hughes stated it had not decided who the new witness(es) would be, but that it might be an individual named Paul Madero, and provided no justification for attempting to add witnesses on the eve of trial in this more than four-year-old case beyond general difficulties relating to the COVID-19 pandemic, but did state no previously identified witnesses were being removed from its trial witness list.[1] Then, on the date of this filing, Baker Hughes disclosed through edits to this Joint Status Report that it intends to add one additional witness, Paul Madero,

---

[1] Contrary to Baker Hughes' representations below, *infra* footnote 2, three of Smith's counsel attended the October 19, 2020 meet and confer and accurately recite their recollection of the information conveyed to them by Baker Hughes' counsel during that meet and confer.

to its trial witness list allegedly due to unidentified circumstances relating to COVID-19, changes in employee roles at the company, and recent employee departures. Baker Hughes also indicated for the first time that it would make Mr. Madero available for a limited deposition. A deposition now would not cure the prejudice of adding a new witness years after discovery and dispositive motions, particularly one who has been employed by Baker Hughes during the entire pendency of this case but never disclosed in Initial Disclosures or any other discovery as a person with knowledge. Smith objects to Baker Hughes' request for additional time to produce updated disclosures of trial witnesses—in light of the timing of this request, the prejudice it will cause, and the fact that Baker Hughes' purported reasons are inconsistent with not removing any of its prior corporate representative witnesses from its trial witness list. Accordingly, Smith respectfully asks that the Court deny Baker Hughes' request.

    **(ii) Claim Construction**: As to Baker Hughes' request for additional time to add yet another round of claim construction briefing on top of the Parties' pretrial schedule, this request comes much too late. This case is over four years old. The Parties identified all terms needing construction over three years ago, including Baker Hughes' request to construe a larger claim phrase that includes the exact same term that Baker Hughes wants to construe now: "a fluid flowing through the tubular body," as recited in claim 27 of U.S. Patent No. 7,314,099 ("the '099 Patent"). *See* Joint Claim Construction Statement (D.I. 63), at 4-5 ("wherein the expandable downhole tool is selectively actuatable to allow or prevent *a fluid flowing through the tubular body* to translate the at least one moveable arm.") (emphasis added). To the extent the included term "a fluid flowing through the tubular body" was separately disputed and required further construction, Baker Hughes should have identified this claim term three years ago when it requested that this Court construe the larger claim phrase. Baker Hughes did not make any such request. This Court

3

resolved those claim construction disputes over two years ago, on July 11, 2018 (D.I. 125), and those claim constructions were relied on during the now-concluded summary judgment and *Daubert* briefing.

As to Baker Hughes' assertion that "the briefing" associated with its Motion for Partial Summary Judgment of Non-Infringement of the '099 patent (D.I. 240) revealed an actual dispute on this term, that briefing occurred in the summer of 2019, Baker Hughes' new counsel joined this case over 6 months ago, and yet, Baker Hughes still waited two months *after* the Court's Order (D.I. 336) that resolved that briefing to request additional construction of that claim term. The construction Baker seeks to raise for "a fluid flowing through the tubular body" is presumably the same incorrect noninfringement argument put forward in its motion for summary judgment, which the Court denied. Any actual dispute over that term would have been apparent to Baker Hughes as of October 2016, when Smith served its infringement contentions accusing the GaugePro Echo of infringing claim 27. The Court should deny Baker Hughes' belated request to re-start the claim construction process. *See Bettcher Indus., Inc. v. Bunzl USA, Inc.*, 661 F.3d 629, 640–41 (Fed. Cir. 2011) (affirming a district court decision holding that it is improper for a party to add new claim construction theories after the party "had ample opportunity to seek [a] construction," "the parties agreed to a schedule of disclosures," a *Markman* order issued, and then "a year after the *Markman* hearing . . . [the party] asked for a *new* construction"). In fact, Baker Hughes took this very now-belated construction position in its own summary judgment briefing in this case. *See* Baker Hughes' Opening Brief in Support of Defendant's Motion for Partial Summary Judgment of Invalidity of U.S. Patent No. 6,732,817 (D.I. 202), at 9-11. It is much too late, and would be much too prejudicial, to restart claim construction now.

4

**(iii) Case Narrowing**: With regard to Baker Hughes' request to narrow the patent claims and prior art references at issue, Smith was first presented with Baker Hughes' request only three days ago on October 19, 2020, and has not had adequate time to fully respond to this request. Based on the Court's summary judgment and *Daubert* rulings, Smith will narrow the number of claims it intends to assert at trial at least six weeks in advance of the scheduled trial date, thereby providing Baker Hughes with ample time to prepare for trial. However, the number of claims that Smith intends to assert at trial may be slightly more than eight and, in any event, this issue should be resolved through attorney discussions and the pre-trial process, not raised on the eve of a joint filing. Smith agrees with Baker Hughes' proposal to the extent that the number of prior art references is limited to the number of asserted claims.

      **B.**    <u>**Baker Hughes's Position:**</u> Baker Hughes believes that this case should proceed to trial in Delaware, with the understanding that such trial date will be subject to courtroom availability and the current COVID-19 circumstances. Baker Hughes respectfully requests adequate time to conduct any necessary or required pre-trial exchanges and submit any necessary or required pre-trial submissions. Baker Hughes believes that additional time should also be afforded for the Parties to supplement any discovery responses or production that is necessary or required under Fed. R. Civ. P. 26(e), including the production of updated financial information and updated disclosures of trial witnesses. Finally, Baker Hughes believes it is necessary for the Court to construe one additional claim term as to which a dispute became apparent during the briefing of summary judgment motions. Baker Hughes believes that the above issues can be addressed as expeditiously as possible over the next few months, given the circumstances, on a schedule that the Parties can work out and submit for Court approval following the telephone conference.

**(i) Updated Disclosures of Trial Witnesses**: During the meet and confer preceding this submission, Baker Hughes's counsel disclosed to Smith's counsel one additional witness due to circumstances relating to COVID-19, changes in employee rolls at the company, and recent employee departures.[2] Baker Hughes identified the witness as Mr. Paul Madero, who recently assumed the role of Vice President of Global Drilling Services, and informed Smith that while the scope of his intended testimony is in the process of being confirmed, it will be limited to introducing Baker Hughes and possibly covering certain topics that other Baker Hughes witnesses have already addressed in depositions. Baker Hughes further offered to make Mr. Madero available for a limited deposition, if necessary. Baker Hughes made this disclosure in a prompt manner, and believes there will be no prejudice to Smith, who will have sufficient time to prepare for and depose Mr. Madero, should that be necessary.

**(ii) Claim Construction**: Baker Hughes believes that the briefing associated with its Motion for Partial Summary Judgment of Non-Infringement of U.S. Patent No. 7,314,099 ("the '099 patent") (D.I. 240) has revealed an actual dispute regarding the proper scope of the claim term "a fluid flowing through the tubular body," which appears in Claim 27 of the '099 patent. This term has not previously been construed by this Court, and Baker Hughes respectfully submits that this term requires a legal construction before the Parties' evidence and arguments can be heard by a jury. *See O2 Micro International Ltd. v. Beyond Innovation Technology Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008) ("When the parties raise an actual dispute regarding the proper scope of these claims, the court, not the jury, must resolve that dispute. ... When the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it.");

---

[2] Contrary to Smith's representation above, counsel for Baker Hughes brought up reasons relating to COVID-19 and employment changes during the October 19 meet and confer call.

*ART+COM Innovationpool GmbH v. Google Inc.*, No. 1:14-217-TBD, 2016 U.S. Dist. LEXIS 66378, at *1-2 (D. Del. May 20, 2016) (resolving a claim construction dispute after motions in limine were submitted); *Cooper Notification, Inc. v. Twitter, Inc.*, 867 F. Supp. 2d 485, 490-91 (D. Del. 2012) ("Although raised for the first time in the summary judgment context, the parties' disagreement … highlights a fundamental dispute over claim meaning, which the Court, rather than a jury, must resolve."). Smith does not deny that an actual dispute regarding the proper scope of the claim term exists.[3] Baker Hughes believes that this issue can be efficiently briefed and submitted to the Court with no prejudice to either party and no disruption to the case schedule.

**(iii) Case Narrowing**: Smith currently asserts against Baker Hughes 43 claims across two separate patents. Baker Hughes believes that this is an unreasonable number of asserted claims for Smith to maintain at this late stage of the proceeding, and it is materially affecting Baker Hughes' ability to prepare for trial. Baker Hughes respectfully submits that Smith should promptly reduce the number of its asserted claims to no more than 4 claims per asserted patent for trial, consistent with the practice in this District. *See Greatbatch Ltd. v. A VX- Corp.*, C.A. No. 13-723-LPS, (D.I. 368) (D. Del. July 28, 2015) (ordering the patent owner to narrow its asserted claims to 15 claims drawn from 5 patents). Baker Hughes will thereafter identify no more than 8 prior art references for use at trial to establish invalidity. *See Power Integrations, Inc. v.*

---

[3] Smith asserts above that the claim term "a fluid flowing through the tubular body" was already before this Court during the *Markman* proceeding and was sufficiently addressed at that time. To the contrary, at the time of the *Markman* proceeding the Parties had not yet identified a dispute as to the meaning of this term in particular, as that proceeding occurred well before expert discovery and summary judgment briefing. Instead, the Parties' *Markman* dispute was centered on the claim language "wherein the expandable downhole tool is selectively actuatable …," and that is the language that the Court addressed in its claim construction. *See* D.I. 125 at 2; D.I. 124 at 10-11 ("This term is closely related to 'selectively actuatable sleeve'"). Smith's mischaracterization notwithstanding, Baker Hughes does not seek to "restart" claim construction, and instead requests a limited and expedited process for addressing an actual claim construction dispute, which Smith does not deny exists.

*Fairchild Semiconductor Int'l, Inc.*, C.A. No. 04-1371-JJF, 2006 WL 2724879, at *6 (D. Del. Sept. 20, 2006) (limiting the accused infringer to seven prior art references because it was "a number equaling the number of claims asserted in this litigation"). While Smith agrees that it is appropriate for it to identify a limited set of asserted claims for trial, Smith has not identified a specific date in the near future by which it intends to do so, any definite number of claims that its assertion will be limited to, or any reasonable basis to further delay in in providing such limitations now (particularly given Smith's representation that it is ready for trial now).

    4.    **MEDIATION:** The Parties are amenable to pre-trial mediation, and are in the process of jointly identifying an appropriate mediator and determining the mediation procedures.

    A.    <u>**Smith's Position:**</u> After this case was filed, Baker Hughes filed a retaliatory patent lawsuit against Smith in the United States District Court for the Southern District of Texas. The Parties have taken the position that if settlement is possible, it would be efficient and economical to settle both cases simultaneously.[4] Accordingly, the Parties have been engaged in mediation efforts before Hesha Abrams of Hesha Abrams Mediation, LLC, and Smith is amenable to resuming those discussions in an attempt to resolve the cases before this case proceeds to trial. While Smith has great respect for Magistrate Judge Fallon, with the Court's permission Smith requests that the Court designate Hesha Abrams as the pre-trial mediator, so as to take advantage of her knowledge of both this case and the Texas case, and the Parties' positions in both, rather than start fresh with Magistrate Judge Fallon.

    B.    <u>**Baker Hughes's Position:**</u> Baker Hughes believes that this case should be mediated in Delaware by Magistrate Judge Sherry R. Fallon. This case was referred to Magistrate

---

[4] Contrary to Baker Hughes' statement below, *infra* footnote 5, the facts surrounding the Texas case speak for themselves, and the Texas case is relevant to the issue of mediation in this case given that the Parties have long endeavored to settle both cases together.

Judge Fallon for mediation on January 18, 2017.  The Parties' prior mediation efforts before Hesha Abrams of Hesha Abrams Mediation, LLC—which originated in connection with Baker Hughes' separate patent infringement case against Smith that remains pending in the Southern District of Texas—did not result in a resolution of either case, and Baker Hughes believes that mediation before Magistrate Judge Fallon would be more productive for both Parties.[5]

The Parties will be prepared to address these topics and any remaining pre-trial issues with the Court during the November 5, 2020 telephone conference.

---

[5] Smith's characterization of Baker Hughes's Texas lawsuit as "retaliatory" is both incorrect and irrelevant to the issue of mediation in this proceeding.

| | |
|---|---|
| **PHILLIPS, MCLAUGHLIN & HALL, P.A.** | **YOUNG CONAWAY STARGATT & TAYLOR, LLP** |
| */s/ John C. Phillips, Jr.* | */s/ Karen L. Pascale* |
| John C. Phillips, Jr. (No. 110) | Karen L. Pascale (#2903) |
| Megan C. Haney (No. 5016) | Robert M. Vrana (# 5666) |
| 1200 North Broom Street | Rodney Square |
| Wilmington, Delaware 19806-4204 | 1000 North King Street |
| Telephone: (302) 655-4200 | Wilmington, DE 19801 |
| jcp@pmhdelaw.com | Telephone: (302) 571-6600 |
| mch@pmhdelaw.com | kpascale@ycst.com |
| | rvrana@ycst.com |

*Attorneys for Plaintiff, Smith International, Inc.*

OF COUNSEL:

John R. Keville
Michelle C. Replogle
Renee T. Wilkerson
Robert L. Green
**WINSTON & STRAWN LLP**
800 Capitol Street, 24th Floor
Houston, TX 77002
Telephone: (713) 651-2600
jkeville@winston.com
mreplogle@winston.com
rwilkerson@winston.com
rlgreen@winston.com

DATED: October 22, 2020

*Attorneys for Defendant, Baker Hughes, a GE company, LLC*

OF COUNSEL:

Frank C. Cimino, Jr.
Megan S. Woodworth
Jason M. Dorsky
**VENABLE LLP**
600 Massachusetts Avenue, NW
Washington, DC 20001
Telephone: (202) 344-4000
FCCimino@Venable.com
JMDorsky@Venable.com
MSWoodworth@Venable.com

Christopher A. Shield
Ryan B. McBeth
Stacianne M. Wilson
**BRACEWELL LLP**
711 Louisiana Street, Suite 2300
Houston, TX 77002-2770
Telephone: (713) 223-2300
chris.shield@bracewell.com
ryan.mcbeth@bracewell.com
staci.wilson@bracewell.com

Anthony F. Matheny
**MATHENY LEGAL SERVICES AND CONSULTING, PLLC**
5955 Woodway Dr.
Houston, Texas 77057
Telephone: (713) 817-7062
anthony@mathenylegal.com